# Third District Court of Appeal
## State of Florida

Opinion filed August 2, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-786
Lower Tribunal No. 21-21706
_____

**Sentient Lasers, LLC,**
Appellant,

vs.

**Ronald DeMeo,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Lourdes Simon, Judge.

Mark Migdal & Hayden, and Joshua A. Migdal, Yaniv Adar, and Maia Aron; Roeser Tanner & Graham LLC, and Charles S. Bergen and Darrell J. Graham (Chicago, IL), for appellant.

Law Offices of Mara Shlackman, P.L., and Mara Shlackman (Fort Lauderdale); Velasquez Dolan, P.A., and Carlos A. Velasquez (Plantation), for appellee.


Before LOGUE, C.J., and FERNANDEZ and GORDO, JJ.

LOGUE, C.J.

Sentient Lasers, LLC appeals the trial court's order vacating an arbitration award entered against Dr. Ronald DeMeo. Because we find that the arbitrator did not exceed his authority, we are constrained to reverse the trial court's order vacating the arbitration award.

## Background

### I.    Contracts at Issue

Dr. DeMeo contracted with Sentient Lasers for the repair and service of a laser machine. Sales Agreement – SO189 provided for the repairs, and Sales Agreement – SO190 provided for a three-year service plan. SO189 also provided a one-time shipping discount relating to the pickup of a second laser machine following the return of the first laser machine being repaired pursuant to SO189.

SO189 consists of a cover letter and a "Sales Agreement." The cover letter is addressed to "Meridian MedSpa" and contains order details followed by a signature from Dr. DeMeo on the bottom of the cover letter. No other text surrounds the signature. The "Sales Agreement" containing "Terms and Conditions," contains "Buyer's Initials" of "RD" throughout. The "Terms and Conditions" provide for extrajudicial dispute resolution, governed by Utah law. It further provides that the parties bound to arbitration are "the signatories hereto."

2

The last page of the "Sales Agreement" contains a signature block with Dr. DeMeo's signature over the following text: "Signature of Business Owner/Operator, or other Principal or Authorized Agent of Buyer [print name of person signing] Ronald DeMeo [print name of business]: Meridian."

SO190 is substantively identical to SO189. The last page of SO190 contains a signature block with Dr. DeMeo's signature and the following text: "Printed Business Name: Meridian Printed Customer's Name: Ronald DeMeo Signature: Ronald DeMeo Title: MD[.]"

II.     Arbitration Proceedings

Following a disagreement regarding the adequacy of Sentient Lasers' repairs to the laser machine pursuant to SO189, Dr. DeMeo stopped making payments under SO190. Sentient Lasers then filed a demand for arbitration pursuant to the contracts. The demand named "Ronald DeMeo dba 'Meridian Med Spa'" as the respondent and alleged breach of contract. Dr. DeMeo participated in the arbitration proceeding but argued that he was not a proper party because he executed the relevant contracts in his capacity as corporate officer of Meridian Pain & Diagnostics, Inc., which did business under the fictitious name Meridian Spine & MedSpa.

Following Sentient Lasers' demand for arbitration, Meridian Pain & Diagnostics (not Dr. DeMeo individually) sent a civil theft notice letter to

3

Sentient Lasers concerning the second laser machine that Sentient Lasers picked up at a discounted rate pursuant to SO189 and had yet to return. Sentient Lasers raised this secondary dispute in the arbitration proceedings, arguing that the notice letter raised arbitrable issues and alleging defenses to the claim. Dr. DeMeo argued this secondary dispute was not subject to arbitration because Meridian Pain & Diagnostics, a non-party to the arbitration, owned the second laser machine and the second laser machine was the subject of a separate lawsuit.

The arbitrator ultimately entered a final award in favor of Sentient Lasers. The arbitrator found that Dr. DeMeo, in his individual capacity, was the proper party to the arbitration and was personally liable. He reasoned that Meridian was Dr. DeMeo's "dba" and not a separate corporation. Dr. DeMeo thus signed the contracts in his personal capacity. Regarding the secondary dispute the arbitrator found that (1) Dr. DeMeo's claim for civil theft against Sentient Lasers was arbitrable; (2) Dr. DeMeo raised but did not prove his civil theft claim in the arbitration; (3) Dr. DeMeo abandoned the second laser machine and had no ownership or possessory rights in it; (4) Sentient Laser's possession and disposition of the second laser machine was not a civil theft; and (5) under Utah law, the final award had both res

4

judicata and claim preclusion effects on any claim that Dr. DeMeo may assert against Sentient Lasers concerning the second laser machine.

III.     Trial Court Proceeding

Sentient Lasers filed a complaint to confirm the arbitration award. In response, Dr. DeMeo moved to vacate the award. He argued the arbitrator exceeded his authority because he entered an award against Dr. DeMeo individually even though he was not a party to the contracts, and he included findings of fact and conclusions of law concerning the second laser machine, which was not the subject of the contracts containing the arbitration agreements.

Following an evidentiary hearing, the trial court granted Dr. DeMeo's motion. In its order, the trial court found that Dr. DeMeo executed SO189 and SO190 as an authorized representative of Meridian Pain & Diagnostics, and not in his individual capacity. The trial court further found that the contracts did not pertain to the second laser machine and that there was no evidence of any agreement regarding the second laser machine.

Based on these findings, the trial court concluded as a matter of Utah law that the arbitrator's award was without foundation in reason or fact with respect Dr. DeMeo's personal liability. The trial court further concluded that

5

the arbitrator lacked subject matter jurisdiction over issues related to the second laser machine. This appeal timely followed.

**Analysis**

We apply Utah law in reviewing this appeal based on the choice of law provision in the governing contracts.[1]

When reviewing an arbitration award, Utah law provides that a trial court's review "is an extremely narrow one giving considerable leeway to the arbitrator, and setting aside the arbitrator's decision only in certain narrow circumstances." Evans v. Nielsen, 347 P.3d 32, 35 (Utah Ct. App. 2015) (quoting Softsolutions, Inc. v. Brigham Young Univ., 1 P.3d 1095, 1099 (Utah 2000)). "The trial court may not substitute its judgment for that of the arbitrator, nor may it modify or vacate an award because it disagrees with the arbitrator's assessment." Id. See also Buzas Baseball, Inc. v. Salt Lake Trappers, Inc., 925 P.2d 941, 946-47 (Utah 1996) ("[T]he standard for reviewing an arbitration award is highly deferential to the arbitrator."); id. at

---

[1] The parties do not dispute that Utah law applies to this matter but contend there is no meaningful conflict between Florida and Utah law regarding the standard of review of arbitration awards. Our review of Utah law, however, indicates that is not the case. We have found that Utah law recognizes a situation in which the arbitrator has exceeded his or her authority that is not found in Florida law – the "irrationality principle." The trial court primarily relied on this principle, moreover, in deciding to vacate the arbitration award here. Therefore, we review and apply only Utah law in deciding this appeal.

947 ("[J]udicial review of arbitration awards should not be pervasive in scope," and should be affirmed "as long as the proceeding was fair and honest and the substantial rights of the parties were respected.").

One such narrow circumstance is where an arbitrator exceeds his or her authority. Utah Code Ann. § 78B-11-124(1)(d) (West 2019). The Utah Supreme Court has recognized two situations in which an arbitrator exceeds his authority: (1) where an arbitrator's award covers areas not contemplated by the submission agreement; and (2) where the award is without foundation in reason or fact. Evans, 347 P.3d at 35–36. This second principle is referred to as the "irrationality principle" and assumes that the parties gave the arbitrator the authority to decide their dispute on a rational basis. Id. at 36.

Here, the trial court concluded that Dr. DeMeo was not personally liable based on the "irrationality principle," and further concluded that the arbitrator lacked subject matter jurisdiction to consider issues related to the second laser machine because it was not the subject of the contracts containing the arbitration agreement. We address each conclusion below.

I.    Dr. DeMeo's Liability

The arbitrator did not exceed his authority when he determined that Dr. DeMeo was personally liable for breach of contract. "The standard for showing [ ] irrationality . . . in an arbitration award is very high." Id. at 37. Utah

7

law is clear that a trial court "does not review an arbitration award for legal error. Rather, . . . an arbitrator's award may not be set aside unless it is so 'completely irrational' that reasonable minds could agree that . . . [the award] was not possible under a fair interpretation of the [evidence]." Id. (internal quotation marks omitted). A trial court's "only duty [is] to determine whether the arbitrator's award was without foundation in reason or fact, not whether it [is] correct as a matter of law." Id. (internal quotation marks omitted).

A correct application of this standard required the trial court to determine whether there was a rational basis to find Dr. DeMeo personally liable, not whether Dr. DeMeo was personally liable. Id. This required only an examination of the facts established by the arbitrator's award and the arbitration agreements. Buzas Baseball, Inc., 925 P.2d at 948-49. By entering findings of fact, however, the trial court substituted its judgment for that of the arbitrator. "This is precisely what a court reviewing an arbitration award may not do." Id. at 949. See also Intermountain Power Agency v. Union Pac. R. Co., 961 P.2d 320, 323 (Utah 1998) ("Whether the court agrees with the arbitrator's judgment is irrelevant, as long as the arbitrator construed and applied the contract in an arguably reasonable manner and acted fairly and within the scope of his authority.").

The contracts at issue only referred to "Meridian MedSpa" and to a business called "Meridian." It was not irrational for the arbitrator to conclude that these references were insufficient to identify "Meridian Pain & Diagnostics" as the contracting party. The trial court improperly concluded that the arbitrator's award was "wholly without foundation in fact" based on a Florida Department of State, Division of Corporations, filing showing that "Meridian Spine & MedSpa" was a fictitious name owned by "Meridian Pain & Diagnostics." This did not render the arbitrator's conclusion irrational because neither "Meridian Spine & MedSpa" nor "Meridian Pain & Diagnostics" appeared anywhere in the contracts.

The only signatory throughout each of the contracts is Dr. DeMeo. While Dr. DeMeo makes much of the fact that "Meridian" is referenced in the signature blocks of each contract, the Utah Supreme Court held in Anderson v. Gardner, 647 P.2d 3, 4 (Utah 1982), that where it is established that the other name appearing in the contract is not a corporation or a registered dba, then the key fact is the signature on the contract. "Defendant's personal liability follows from that unqualified signature." Id.

Having established that there was no corporation called "Meridian MedSpa" or "Meridian," the arbitrator had a rational basis to conclude that Dr. DeMeo was the responsible party. See Smith & Edwards v. Golden Spike

9

Little League, 577 P.2d 132, 134 (Utah 1978) ("The principle of law which is controlling . . . is that where a person enters into a contract with another, under a representation that he is acting as agent for a principal, when there is in fact no such principal, he renders himself personally liable upon the contract.").

Accordingly, the trial court erred in finding that the arbitrator exceeded his authority because the arbitrator's award is rational and has evidentiary support.

II.     Scope of Arbitration Agreements

The arbitrator did not exceed his authority in arbitrating the dispute regarding the second laser machine. "Generally, to find that an arbitrator has exceeded his authority, a court must review the submission agreement and determine whether the arbitrator's award covers areas not contemplated by the submission agreement." Buzas Baseball, Inc., 925 P.2d at 949. When deciding whether the parties consented to arbitrate a certain matter, courts "generally ... apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Here, the parties' agreements provide: "The Parties agree that any dispute, controversy, or claim arising out of, relating to, or in connection with

this Agreement, including but not limited to issues regarding the formation, applicability, breach, termination, validity or enforceability thereof, shall be submitted . . . to arbitration." The parties further agreed that "[w]ith the sole exception of judicial enforcement of an arbitration award, . . . no court shall have any jurisdiction over any matter of substantive or procedural arbitrability. All such questions shall be the sole province of one arbitrator."

Courts have generally interpreted similar language quite expansively. See, e.g., Brown v. Coleman Co., 220 F.3d 1180, 1184 (10th Cir. 2000) (arbitration clause stating that "all disputes or controversies arising under or in connection with this Agreement will be settled exclusively by arbitration" was "the very definition of a broad arbitration clause as it covers not only those issues arising under the employment contract, but even those issues with any connection to the contract" (ellipsis and internal quotation marks omitted)). In addition, the parties also expressly granted the arbitrator the power to determine "any matter of substantive or procedural arbitrability." This means that the arbitrator decides any questions regarding whether an agreement to arbitrate exists or whether an issue is arbitrable. This includes deciding the arbitrability of the dispute relating to the second laser machine.

SO189 expressly referenced the second laser machine and provided for "shipping – picking up [of the second laser machine] for service" following

delivery of the repaired laser machine. It was this pickup for service and subsequent failure to timely return the second laser machine that resulted in the civil theft notice to Sentient Lasers. Under these circumstances, it was error for the trial court to conclude that the arbitrator exceeded his authority by determining that Dr. DeMeo's civil theft claim was arbitrable and making findings and conclusions relating thereto.

## Conclusion

The arbitrator exercised the authority granted to him under the parties' arbitration agreement and the arbitrator's award cannot be said to be irrational or utterly lacking evidentiary support. Accordingly, we reverse the trial court's order and remand for confirmation of the arbitration award.